**Ogletree Deakins**

**OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.**

*Attorneys at Law*

599 Lexington Ave, Fl 17
New York, New York 10022
Telephone: 212-492-2500
Facsimile: 212-492-2501
www.ogletree.com

Matthew P. Gizzo
(212) 492-2093
matthew.gizzo@ogletree.com

March 28, 2024

**VIA ECF**

Hon. James L. Cott
Magistrate Judge
United States District Court
Southern District of New York
500 Pearl Street, Courtroom 21-D
United States Courthouse
New York, NY 10007

      Re:    *Cruz, et al. v. Brink's Global Services USA, Inc.*
              **Case No. 1:23-cv-02527-JLC**

Dear Judge Cott,

      As you may be aware, the undersigned represents counsel for Defendant Brink's Global Services USA, Inc. ("BGS"), in the above-referenced matter. I appreciate Your Honor granting Ms. Ghim's request for an additional week to submit the motion for settlement approval. However, I do feel compelled to set the record straight on Ms. Ghim's factual inaccuracies in her letter to Your Honor—a letter which was highly unprofessional.

      Initially, I acknowledge that Ms. Ghim did call me today (while I was tied-up on another call), and I emailed her telling her I would try her back at 3:30 p.m. Unfortunately, I then got caught on other calls and did not get the opportunity to do so. However, rather than email me the letter she intended to send to Your Honor requesting the extension (or even email me to tell me she intended to request an extension), she just went ahead and filed the letter. More concerning however, rather than simply request the extension, Ms. Ghim used the letter as an opportunity to launch an unnecessary and unprofessional attack on counsel by way of blatant factual inaccuracies.

      On February 14, 2024, Ms. Ghim sent an email to me and the mediator (1) confirming her understanding of the agreed-to amounts of the settlement; (2) *__proposing__* some other key terms (regarding payment timing and the Court retaining jurisdiction to enforce the agreement, among others); and (3) outlining what she believed were certain non-negotiable terms under *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199 (2d Cir. 2015), and subsequent relevant case law.

Atlanta ▪ Austin ▪ Berlin (Germany) ▪ Birmingham ▪ Boston ▪ Charleston ▪ Charlotte ▪ Chicago ▪ Cleveland ▪ Columbia ▪ Columbus ▪ Dallas ▪ Denver ▪ Detroit Metro ▪ Greenville ▪ Houston
Indianapolis ▪ Kansas City ▪ Las Vegas ▪ London (England) ▪ Los Angeles ▪ Memphis ▪ Mexico City (Mexico) ▪ Miami ▪ Milwaukee ▪ Minneapolis ▪ Montréal (Canada) ▪ Morristown
Nashville ▪ New Orleans ▪ New York City ▪ Oklahoma City ▪ Orange County ▪ Paris (France) ▪ Philadelphia ▪ Phoenix ▪ Pittsburgh ▪ Portland, ME ▪ Portland, OR ▪ Raleigh ▪ Richmond
St. Louis ▪ St. Thomas ▪ Sacramento ▪ Salt Lake City ▪ San Antonio ▪ San Diego ▪ San Francisco ▪ Seattle ▪ Stamford ▪ Tampa ▪ Toronto (Canada) ▪ Torrance ▪ Tucson ▪ Washington

Notably, I never responded to Ms Ghim agreeing to the additional terms she ***unilaterally proposed*** in her email, as typically the parties work through those terms via the settlement agreement(s). Thus, Ms. Ghim's suggestion that I "unilaterally changed several material terms of the agreement that were contrary to the mediation term sheet / email dated on or about February 14, 2024" is simply false and disingenuous. First, BGS never agreed to Ms. Ghim's ***unilaterally proposed*** additional terms in the "mediation term sheet," and, as such, it is Ms. Ghim that is trying to force BGS to accept terms to which the parties did not agree. Second, Ms. Ghim herself actually did not comply with the terms detailed in her purported "mediation term sheet," as the agreements she circulated were not consistent with the terms therein (namely, the settlement amount allocations). Accordingly, Ms. Ghim's suggestion that my revisions to return those incorrect settlement allocation terms back to the terms detailed in her purported "mediation term sheet" was an attempt to "unilaterally change[] several material terms" is simply false, and, in fact, more accurately describes her own conduct. In light of the foregoing, if anything, the Court should compel Ms. Ghim to comply with the terms of her purported "mediation term sheet," not the undersigned.

Finally, in terms of timing, while Ms. Ghim did send a proposed settlement agreement for Mr. Morris on January 16, 2024, the parties did not reach a settlement-in-principle to resolve the matter as to all plaintiffs until February 14, 2024 (nearly a month later). Thereafter, Ms Ghim did not provide a proposed agreement for Mr. Cruz, Mr. Roberts, and Mr. Beard (which, as she notes, is meaningfully different than Mr. Morris' because Mr. Cruz, Mr. Roberts, and Mr. Beard are all former employees of BGS while Mr. Morris is a current employee) until February 21, 2024—five days after the Court's Order directing the parties to submit their motion for settlement approval by March 1, 2024 [ECF Doc. 15], and just nine days prior to the deadline. Most notably however, the agreement Ms. Ghim provided was poorly drafted, unorganized, and riddled with typos.

In any event, a few days after Ms. Ghim sent the proposed agreement for Mr. Cruz, Mr. Roberts, and Mr. Beard, the parties conferred on requesting an extension of time to submit the motion for settlement approval. At that time, Ms. Ghim suggested a two-week extension, whereas I requested a sixty-day extension, recognizing that I had significant personal and professional commitments over the next few weeks, which were complicated by a sudden departure of one of the Shareholders in our New York City office. Rather than agree to the requested sixty-day extension (which I proposed for the very purpose of trying to avoid this situation in light of my upcoming personal and professional commitments), Ms. Ghim would only agree to thirty days. Thus, it comes as no surprise that the parties need additional time to finalize the agreements and obtain the necessary signatures for submission.

What the undersigned finds incredible is that Ms. Ghim thought it was necessary (and productive) to waste the Court's time and resources to whine about ongoing efforts to finalize multiple settlement agreements less than forty-five days after a settlement-in-principle was reached between the parties, particularly given that the parties are close to finalizing the agreements and should be able to do so in short order.

I apologize for even having to submit this correspondence to Your Honor, but I felt it necessary to set the public record straight on Ms. Ghim's factual inaccuracies. I thank Your Honor

Honorable James L. Cott
March 28, 2024
Page 3

for taking the time to review this correspondence and for granting the requested extension. I am confident the parties will be able to finalize the settlement agreement terms and submit the motion for settlement approval quickly.

        Respectfully submitted,

        OGLETREE, DEAKINS, NASH,
        SMOAK & STEWART, P.C.

By: _____
        Matthew P. Gizzo

cc:    *All Counsel of Record (via ECF)*